PEOPLE v FELDMANN

Docket No. 95302. Submitted October 12, 1988, at Detroit. Decided
December 19, 1989.

Robin D. Feldmann was convicted of two counts of armed robbery
and two counts of second-degree murder, Wayne Circuit Court,
Thomas Roumell, J. Defendant received concurrent prison sen-
tences of two to twenty years for the armed robbery convictions
and fifteen to forty years for the second-degree murder convic-
tions. Defendant appealed.

The Court of Appeals *held:*

1. Defendant's custodial statements to the Dearborn police
were sufficiently acts of free will to justify their admission in
evidence. Such statements were not involuntary or taken in
violation of defendant's right against self-incrimination. Defen-
dant's statements to the Dearborn police proceeded from cir-
cumstances sufficiently attenuated from any initially tainted
actions by the Washtenaw County sheriff's office.

2. Defendant's delayed arraignment, when viewed in light of
the totality of the circumstances surrounding her confessions,
does not lead to the conclusion that the confessions were
involuntary.

3. The prosecution met its burden of disproving defendant's
duress defense beyond a reasonable doubt.

4. The trial court did not abuse its discretion in permitting
defendant to be questioned regarding her participation in an-
other robbery pursuant to MRE 404(b).

5. The trial court properly denied defendant's motion for a
directed verdict on the theory of aiding and abetting felony
murder. There was sufficient evidence to justify a finding that
defendant was guilty of aiding and abetting felony murder.

6. The record amply supports the conviction on two counts of
second-degree murder as an aider and abettor.

Affirmed.

REFERENCES

Am Jur 2d, Evidence §§ 545-547, 555, 577, 1134; Homicide §§ 27, 29,
44, 45, 72, 119, 282, 310.

Sufficiency of showing that voluntariness of confession or admission
was affected by alcohol or other drugs. 25 ALR4th 419.

1. CRIMINAL LAW — SEARCHES AND SEIZURES.

A court, to determine whether police conduct amounts to a seizure of an individual implicating the Fourth Amendment, must take into consideration all the circumstances surrounding the incidents in each individual case; a Fourth Amendment seizure occurs only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

2. CRIMINAL LAW — EVIDENCE — CONFESSIONS — ARREST.

A defendant's unlawful detention does not mandate suppression of the defendant's confession unless there exists a causal nexus between the illegal arrest and the confession; such a determination focuses upon (1) the temporal proximity between arrest and confession, (2) the flagrancy of official misconduct, (3) any intervening circumstances occurring after arrest, and (4) any circumstances antecedent to the arrest.

3. CRIMINAL LAW — DEFENSES — INTOXICATION.

While advanced intoxication from drugs may preclude an effective waiver of *Miranda* rights, the fact that a person is under the influence of drugs is not dispositive of the issue of the voluntariness of a confession.

4. CRIMINAL LAW — EVIDENCE — CONFESSIONS — VOLUNTARINESS — PREARRAIGNMENT DELAY.

Unnecessary delay prior to arraignment is only one factor to be taken into account in evaluating the voluntariness of a confession; if the totality of the surrounding circumstances indicates that a confession was voluntarily given, it should not be excluded from evidence solely because of prearraignment delay (MCL 764.13, 764.26; MSA 28.871[1], 28.885).

5. HOMICIDE — DEFENSES — COERCION.

Coercion is not a viable defense to a murder charge.

6. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS.

Evidence of a criminal defendant's similar criminal act may be admitted where (1) there is substantial evidence that the defendant actually perpetrated the similar act sought to be introduced; (2) some special quality or circumstance of the act tends to prove the defendant's identity, or the motive, intent, absence of mistake or accident, scheme, plan or system in doing the act, or opportunity, preparation, or knowledge; (3) one or more of those factors is material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence substantially outweighs the danger of unfair prejudice (MRE 404[b]).

7. HOMICIDE — FELONY MURDER — AIDING AND ABETTING — INTENT — MALICE.

Malice necessary to support a conviction of aiding and abetting felony murder is present where sufficient evidence is introduced from which a reasonable trier of fact could find malice beyond a reasonable doubt in the defendant's participation in the underlying felony with knowledge of the principal's intent to kill.

8. HOMICIDE — MALICE — SECOND-DEGREE MURDER — FIRST-DEGREE MURDER — FELONY MURDER.

The required mental state for second-degree murder is malice, i.e., the intention to kill, the intention to cause great bodily harm, or wanton or willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm; a finding of malice is also required to convict for first-degree murder under a felony-murder theory.

9. HOMICIDE — FIRST-DEGREE MURDER — SECOND-DEGREE MURDER.

Second-degree murder is a lesser included offense of first-degree murder.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Mary Sue Czarnecki,* Assistant Prosecuting Attorney, for the people.

*Ilsa Draznin,* for defendant.

Before: HOLBROOK, JR., P.J., and SAWYER and J. M. BATZER,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of two counts of armed robbery, MCL 750.529; MSA 28.797. The jury was unable to reach a verdict on two counts of first-degree murder, and a mistrial was declared. Defendant was retried to the bench and was convicted of two counts of second-degree murder, MCL 750.317;

---

* Circuit judge, sitting on the Court of Appeals by assignment.

MSA 28.549. She received concurrent prison sentences of two to twenty years on the armed robbery convictions and fifteen to forty years on the murder convictions, and now appeals as of right.

I

Defendant's convictions stem from the robbery and execution-style deaths of James Hoos and Sally Tuck in the early hours of September 22, 1985. The crimes occurred at Hoos' home in Dearborn, Michigan, where he resided in a lower flat below the intended victim, drug dealer Kenneth Kondratko. Hours after the Dearborn killings, defendant was also involved in the robbery and killing of drug dealer James Visel at his home in Washtenaw County. Also implicated in the foregoing crimes were defendant's coaddict boyfriend, Allen Lumsden, who was separately convicted in the Dearborn and Washtenaw County homicides, and Rodney Crawford, a drug dealer also charged in the Washtenaw homicide.

Washtenaw County sheriff's officers apprehended Lumsden following a high-speed chase of his pickup truck early September 24, 1985. It was suspected that he was going to Crawford's home in Ypsilanti to harm someone. Officers then proceeded to the Crawford residence where they found defendant, Crawford and Deborah Schmidt. The three were taken to the Washtenaw County sheriff's office for questioning. Washtenaw County Sheriff's Detective Lloyd Stamper read defendant her *Miranda** rights and offered her immunity if she would come forward with information about the Washtenaw County homicide. Defendant initially denied knowledge of the crime but a few

* *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).—Reporter.

hours later, after again being read her *Miranda* rights and being interviewed in preparation for a polygraph test which was never taken, defendant confessed to the polygraph examiner that she was aware of the killing and that she, along with Lumsden and Crawford, had planned the robbery.

Crawford and Schmidt left the sheriff's office mid-morning after being told that they were free to leave. Stamper had not told defendant that she could leave but defendant signed a polygraph waiver form acknowledging her right to leave at any time and the polygraph examiner informed her of her right to do so. Defendant was placed under arrest for the Washtenaw County crimes after Stamper took a taped statement from her at approximately 2:00 P.M. At the conclusion of the statement, defendant's comments indicated she did not understand that Stamper's immunity offer was limited to the initial questioning period only.

Defendant was next questioned by Dearborn Police Detective Michael Stanczyk from approximately 2:30 to 3:45 P.M. regarding the Dearborn homicides. Defendant had previously denied knowledge of the Dearborn crimes during questioning by Washtenaw County detectives. After being readvised of her *Miranda* rights, defendant gave a signed statement to Stanczyk explaining that she and Lumsden went to drug dealer Kondratko's Dearborn residence to rob him. When they were unable to gain entry to the upstairs flat from outside, they entered the downstairs apartment and robbed its occupants. Defendant admitted to binding the victims and then entering and ransacking Kondratko's apartment. As defendant left to pull Lumsden's truck into the driveway, Lumsden told her "they saw us, so they have to go." Defendant heard two shots as she waited for Lumsden in the truck.

The following morning, Stanczyk interviewed Lumsden about the Dearborn homicides and was given a statement which did not totally comport with defendant's statement. That afternoon, Stanczyk again questioned defendant at the Washtenaw County Jail. Defendant gave a second signed statement with a revised version of the Dearborn homicides, this time implicating Crawford as the one who fired the fatal shots while defendant and Lumsden waited in the truck.

Following a suppression hearing held pursuant to *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965), defendant's confession to the Washtenaw County offenses was suppressed on the ground that she had been promised immunity. Defendant's motion to suppress her two confessions to the Dearborn offenses was denied for the reason that the taint of the immunity promise did not accrue to the statements taken by Officer Stanczyk.

II

On appeal, defendant argues that her statements to the Dearborn police should have been suppressed because they were the fruit of her unlawful arrest and prior coerced statements to Washtenaw County authorities, and were taken in violation of her right against self-incrimination and the prompt arraignment statute. We disagree with these contentions.

To determine whether police conduct amounts to a seizure of an individual implicating the Fourth Amendment, a court must take into consideration all the circumstances surrounding the incidents in each individual case. *Michigan v Chesternut,* 486 US —; 108 S Ct 1975, 1979; 100 L Ed 2d 565, 571 (1988). A Fourth Amendment seizure occurs "only

if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.,* 108 S Ct 1979; 100 L Ed 2d 572, quoting *United States v Mendenhall,* 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980) (opinion of Stewart, J.).

A review of the instant record reveals that the lower court judge made no determination whether defendant's initial custody violated her Fourth Amendment rights against unreasonable seizure of her person. However, even assuming that her initial custody violated her constitutional rights, US Const, Am IV; Const 1963, art 1, § 11, we do not find defendant's statements to be the products of the violation.

A defendant's unlawful detention does not mandate suppression of the defendant's confession unless there exists a causal nexus between the illegal arrest and the confession. *People v Emanuel,* 98 Mich App 163, 176; 295 NW2d 875 (1980), lv den 414 Mich 871 (1982), cert den sub nom *Emanuel v Michigan,* 459 US 1220; 103 S Ct 1226; 75 L Ed 2d 461 (1983). Whether the connection between a defendant's detention and confession is sufficiently attenuated to purge the confession of its primary taint is determined by focusing upon: (1) the temporal proximity between arrest and confession; (2) the flagrancy of official misconduct; (3) any intervening circumstances occurring after arrest; and (4) any circumstances antecedent to arrest. *People v Mallory,* 421 Mich 229, 243, n 8; 365 NW2d 673 (1984), reh den 422 Mich 1201 (1986). See also *Brown v Illinois,* 422 US 590, 603-604; 95 S Ct 2254; 45 L Ed 2d 416 (1975).

The application of the foregoing factors to the instant case leads us to conclude that defendant's custodial statements were sufficiently acts of free will to justify their admission. First, defendant's

statements were made over eight hours after she was taken into custody. Second, even if during the initial three hours of detention the Washtenaw County detectives failed to effectively apprise defendant that she was free to leave, we do not find such conduct so flagrantly improper as to militate against admissibility. Third, during the latter hours of her preconfession custody, defendant was repeatedly reminded that she was there voluntarily and was shown that the door to the interrogation room was not locked. Additional intervening circumstances included defendant's statements regarding the Washtenaw County homicide, elicited not by the inherent coerciveness of her detention, but, rather, a mistaken expectation of immunity. Defendant's arrest for the Washtenaw County crimes further dissipated any taint from her initial detention. Finally, defendant's first statement regarding the Dearborn homicides, implicating Lumsden as the sole gunman, would appear to have been fostered more by Crawford's antecedent instruction to let Lumsden take the blame than by defendant's unlawful arrest.

We are not persuaded by defendant's argument that her confessions to the Dearborn crimes were involuntary and taken in violation of her right against self-incrimination. Our examination of the totality of the circumstances surrounding defendant's confessions convinces us that the statements were made voluntarily.

Though defendant appears to have been tired during the initial day of interrogation, we find that she was at all times sufficiently mentally alert to make an intelligent waiver of her right to remain silent. While advanced intoxication from drugs may preclude an effective waiver of *Miranda* rights, the fact that a person is under the influence of drugs is not dispositive of the issue of

voluntariness. *People v Leighty,* 161 Mich App 565, 571; 411 NW2d 778 (1987), lv den 430 Mich 895 (1988). Although defendant appeared to be on some kind of narcotics or alcohol when initially taken into custody, her confessions to the Dearborn crimes were made over eight hours later. Officer Stanczyk testified that, at that time, defendant did not appear to be under the influence of drugs.

As concluded above, we find that defendant's statements proceeded from circumstances sufficiently attenuated from any initially tainted actions of the Washtenaw County authorities. Although Officer Stanczyk appears to have exaggerated to defendant as to the existence of eyewitnesses who could identify her as a participant in the Dearborn crimes, Stanczyk's statements were made on the second day of questioning after defendant had already implicated herself. Thus, we find the misinformation did not operate to overcome defendant's will to remain silent.

Our finding that defendant's statements were voluntarily made is also dispositive of defendant's argument that the statements were inadmissible because of a delay in arraignment under MCL 764.13, 764.26; MSA 28.871(1), 28.885. While an arrestee must be arraigned without unnecessary delay, such delay is but one factor in the determination of voluntariness, and an otherwise competent confession should not be excluded solely because of delayed arraignment. *People v Cipriano,* 431 Mich 315, 334-335; 429 NW2d 781 (1988). Defendant's delayed arraignment, when viewed in light of the totality of the circumstances surrounding her confessions, does not lead us to conclude that the confessions were involuntary.

Our review of the record has not left us with a definite and firm conviction that the trial court

made a mistake in denying defendant's motion to suppress her statements as to the Dearborn crimes. Accordingly, the suppression ruling does not afford a basis for reversal of defendant's convictions. *People v Fisher,* 166 Mich App 699, 703; 420 NW2d 858 (1988).

III

We find several of defendant's remaining assignments of error to be without merit. The prosecution met its burden of disproving defendant's duress defense beyond a reasonable doubt. Evidence was presented suggesting that defendant played a role in planning the Dearborn robbery and took independent steps to aid in its execution, such as changing into more suitable clothing prior to the crime. As for defendant's murder charges, coercion was not a viable defense. *People v Dittis,* 157 Mich App 38, 40-41; 403 NW2d 94 (1987), lv den 428 Mich 911 (1987).

The trial court did not abuse its discretion in permitting defendant to be questioned regarding her participation in the Washtenaw County robbery pursuant to MRE 404(b). *People v Golochow-icz,* 413 Mich 298, 322; 319 NW2d 518 (1982). The four criteria for admission of similar acts evidence were met here because: (1) the testimony of defendant and Schmidt provided substantial evidence that she had in fact committed the alleged similar act, (2) the intended victim of both the Washtenaw County and Dearborn robberies was a drug dealer, a shared circumstance probative of defendant's intent and scheme, (3) defendant's intent and willful participation were material to the resolution to her duress defense, and (4) the probative value of the evidence was not substantially outweighed by unfair prejudice since the trial court limited the

questioning to the Washtenaw County robbery only, excluding any reference to the Washtenaw County homicide. *Golochowicz, supra,* p 309.

The trial court did not err in denying defendant's motion for a directed verdict on the theory of aiding and abetting felony murder. Sufficient evidence was presented from which a reasonable trier of fact could find malice beyond a reasonable doubt in defendant's participation with knowledge of her principal's intent to kill. *People v Kelly,* 423 Mich 261, 278-279; 378 NW2d 365 (1985). Although the homicides may not have been intended at the commencement of the robbery, it is sufficient that defendant became aware of the intention to kill at some point during the robbery. She was aware of Lumsden's possession of the shotgun when they left Ypsilanti with the intent of committing a break-in/robbery in Dearborn. After participating in the entry in which the victims were held at bay by Lumsden's pointing the shotgun at them, defendant then bound and tied the victims while Lumsden continued to hold them at gunpoint. *Id.,* p 280. Here, Lumsden told defendant during the commission of the robbery that the victims would "have to go." Viewed in a light most favorable to the prosecution, we find there was sufficient evidence to justify a rational trier of fact in finding beyond a reasonable doubt that defendant was guilty of aiding and abetting felony murder. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), cert den sub nom *Michigan v Hampton,* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980). The trial court did not, however, find defendant guilty of first-degree murder, but rather of second-degree murder.

IV

Defendant lastly argues that the trial court,

sitting as the trier of fact, erred in its findings on the intent element of murder in the second degree. MCR 2.517(A)(1), formerly GCR 1963, 517.1, provides that a court in a bench trial must make findings of fact and conclusions of law on contested matters. The rule applies equally to both criminal and civil cases. *People v Jackson,* 390 Mich 621, 627; 212 NW2d 918 (1973). Although there is a split among the panels of this Court as to whether the court rule requires the trial court to make specific findings of fact on each element of the charged offense in all cases, there is no disagreement that remand is necessary where a trial court's fact-findings are so deficient that doubt is created as to whether the trial court correctly applied the law to the facts. See, e.g., *People v Taylor,* 133 Mich App 762, 766; 350 NW2d 318 (1984), rev'd and remanded on other grounds 422 Mich 554, 568; 375 NW2d 1 (1985).

There are some seemingly contradictory findings in the instant case. The required mental state for second-degree murder is malice, i.e., the intention to kill, the intention to cause great bodily harm, or wanton or willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. *People v Dykhouse,* 418 Mich 488, 495; 345 NW2d 150 (1984); *People v Aaron,* 409 Mich 672, 730; 299 NW2d 304 (1980). A finding of malice is also required to convict for first-degree murder under a felony-murder theory. *Aaron, supra.*

Here, the trial court found defendant was "part and parcel as a principal in the perpetration of the breaking and entering and in the plan to rob Kondratko" and was "well aware" that the homicide victims would be harmed, and the court characterized defendant's participation as "willful and wanton." It further found that "there is good basis

on which to consider her [defendant's] involvement only as an aider and abettor insofar as the killing only is concerned." However, the trial court went on to find that defendant did not have the "mental resolution" necessary for aider and abettor culpability as outlined in *Kelly, supra.* Paradoxically, the trial court found defendant's intent insufficient to support a conviction of first-degree felony murder, but sufficient to convict her of "second-degree felony murder." Because the requisite intent for both felony murder and second-degree murder is malice, it would seem that if defendant lacked the intent for one, then she would also lack it for the other, and vice versa.

Perhaps the trial court had intended to say that the intent to kill, coming more as an afterthought by defendant's accomplice than part of the robbery scheme which defendant helped to plan, was too attenuated from defendant's intended participation in the underlying felony to convict defendant of first-degree murder simply because defendant's wanton disregard occurred during the commission of an enumerated felony. We can understand the trial court's unfortunate choice of the words "second-degree felony murder," despite the fact that the second-degree murder statute contains no enumerated felonies, since after *Aaron, supra,* felony murder requires malice, not merely the concurrence of a killing and the commission of an enumerated felony. The trial court several times alluded to and diligently tried to apply the rule of *People v Kelly, supra.* As pertains to aiding and abetting, our Supreme Court in *Kelly* held:

> The requisite intent is that necessary to be convicted of the crime as a principal. *Meister v People,* 31 Mich 99 (1875). In this instance, under *Aaron,* it therefore must be shown that the aider

and abettor had the intent to kill, the intent to cause great bodily harm or wantonly and willfully disregarded the likelihood of the natural tendency of his behavior to cause death or great bodily harm. *Aaron,* 409 Mich 733. Further, if the aider and abettor participates in a crime with knowledge of his principal's intent to kill or to cause great bodily harm, he is acting with "wanton and willful disregard" sufficient to support a finding of malice under *Aaron.* [423 Mich 278-279.]

In applying *Kelly,* the error, if any, of the trial court was that it stopped short of applying the last quoted sentence addressing the aider and abettor's knowledge of the principal's intent. This is understandable as footnote 6 from *Kelly* acknowledges that the Supreme Court itself in its order granting leave in *Kelly* stated the issue too narrowly:

It is noted that in the order granting leave to appeal we stated the issue as "whether the trial court's instructions were erroneous in permitting a conviction of felony murder on an aiding and abetting theory without a finding that defendant possessed an intent to murder." As *Aaron* indicates, the malice necessary to support a murder conviction can be found by a "wanton and willful disregard of the likelihood that the natural tendency of his behavior is to cause death or great bodily harm." Therefore it is clear that the *Aaron* rule is broader than our question implies. [423 Mich 279.]

In other words, it is possible in the case sub judice that the trial court applied *Kelly* in an erroneous manner such that defendant benefited by being convicted of second-degree murder when a proper application would have resulted in a conviction of first-degree felony murder.

We note, however, that the trial court correctly concluded that second-degree murder is a lesser

included offense of first-degree murder. *People v Jenkins,* 395 Mich 440, 442; 236 NW2d 503 (1975), reh den 396 Mich 977 (1976). We find that the record amply supports the conviction on two counts of second-degree murder as an aider and abettor. In the final analysis, after careful examination of the record, we believe defendant's argument that the trial court erred in its findings of fact as regards the mens rea element of second-degree murder amounts to no more than an argument that, since defendant could have been convicted of first-degree felony murder but was not, she should not be convicted of second-degree murder. We disagree.

Affirmed.