PEOPLE v ETHERIDGE

PEOPLE v SANDERS

Docket Nos. 109515, 110214. Submitted June 9, 1992, at Detroit. Decided September 9, 1992, at 9:20 A.M. Leave to appeal sought.

Lamont Etheridge and Antonio Sanders were convicted by a jury in the Recorder's Court of Detroit, Gershwin A. Drain, J., of first-degree murder. Both appealed, claiming error in the admission in their joint trial of their redacted statements and the redacted statement of an acquitted codefendant and in their being bound over on charges of first-degree murder and felony murder. Etheridge claimed additional error in the denial of his motion for a separate trial, in the court's failure to give his requested instruction concerning the crime of manslaughter, and in permitting comments by the prosecutor during closing arguments. Sanders also claimed error in the refusal of the court to give his requested instruction concerning duress and in the denial of his motion to suppress use of his statement. The appeals were consolidated.

The Court of Appeals held:

1. The redacted statements of each of the three codefendants suggested that the murder was committed by two persons. Because there is a suggestion that there was a fourth person present, there was no clear implication from the redacted statements that either of the convicted codefendants committed the crime. Accordingly, it was not error to admit the redacted statements with the cautionary instruction each statement could be considered only for the purpose of deciding the guilt of the person who made the statement. Even if it were error to

REFERENCES

Am Jur 2d, Criminal Law §§ 722, 729, 731; Trial § 168.

Supreme Court's application of rule of Bruton v United States (1968) 391 US 123, 20 L Ed 2d 476, 88 S Ct 1620, holding that accused's rights under confrontation clause of Federal Constitution's Sixth Amendment are violated where codefendant's statement inculpating accused is admitted at joint trial. 95 L Ed 2d 892.

Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to accomplice's testimony against defendant in federal criminal trial. 17 ALR Fed 249.

admit the redacted statements into evidence, the error was harmless beyond a reasonable doubt because the evidence of guilt of the convicted codefendants was overwhelming.

2. The court did not abuse its discretion in denying Etheridge's motion for a separate trial, because there was no affirmative showing that any of his substantial rights would be prejudiced in a joint trial.

3. There was sufficient evidence presented to the examining magistrate to support the binding over of the defendants for trial on the charge of first-degree murder. There also was an adequate showing of the crime of larceny of the victim's automobile to support binding over the defendants on the charge of felony murder.

4. Because there was no evidence adduced at trial to suggest that the killing of the victim was done in the heat of passion immediately following adequate and reasonable provocation, the court properly refused to charge the jury concerning the crime of manslaughter.

5. Nothing in the record supports the contention that the prosecutor's comments during closing argument denied the defendants a fair trial.

6. Duress is not a valid defense to homicide.

7. The court did not clearly err in determining that Sanders' statement was voluntary and not secured by a promise of leniency.

Affirmed.

EVIDENCE — JOINT TRIALS — CODEFENDANTS' REDACTED STATEMENTS.

A defendant is not deprived of the right of confrontation in a joint trial where the redacted statements of codefendants do not present a clear implication of criminal involvement of the defendant and the jury is instructed to consider each statement only in deciding the guilt of the person who made the statement (US Const, Am VI; Const 1963, art 1, § 20).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Olga Agnello,* Assistant Prosecuting Attorney, for the people.

*Craig A. Daly,* for defendant Etheridge.

*Robert M. Morgan,* for defendant Sanders.

Before: MARILYN KELLY, P.J., and McDONALD and REILLY, JJ.

PER CURIAM. In these consolidated cases, defendants appeal as of right from their convictions after a jury trial of first-degree murder, MCL 750.316; MSA 28.548. We affirm.

Valerie Cross testified at trial that on the night of December 11, 1987, she was in her apartment with a friend that she identified only as Mario. Defendant Sanders came to the apartment and said that he had a man in the car that he was going to bring up to the apartment. Sanders told Cross that he was "going to kill this guy." Sanders then brought William Mercer up to Cross' apartment. Shortly after they entered the apartment, Sanders asked to use Mercer's car. Mercer agreed and Sanders then gave him a rock of cocaine in exchange for the use of the car.

A short time after Sanders left, defendants Lamont Etheridge and Robert Stoner walked into the apartment. Etheridge had a knife in his hand and entered the bedroom where Mercer and Cross were smoking crack cocaine. Etheridge cursed at Mercer. When Stoner asked what was going on, Etheridge pushed him on the bed and told him to "shut up." Mercer began pleading for his life. Cross ran out of the room. On her way out she saw Sanders standing in the bathroom.

Cross left the apartment and entered the apartment next door through a milk chute. Cross heard Mercer pleading for his life and heard Etheridge cursing at him and telling him to shut up. Cross then heard the apartment door close and heard more than two people going down the stairs. Cross

heard a car being moved and heard Sanders say, "It's clear."

Cross then went to a window and saw Sanders standing by the trunk of the car. Etheridge and Stoner were carrying Mercer and put him in the trunk of the car. Mercer was bound at the hands and feet. Sanders then got in the driver's side of the vehicle. Etheridge and Stoner also got in the car. Cross was in the hallway of the apartment building when Etheridge, Sanders, and Stoner returned. As they were ascending the stairs, she heard a conversation regarding some logs and why the body would not come back up.

Sanders took Cross to stay at a relative's apartment. She called the police the next evening regarding the incident. As a result of her statements, the police went to her apartment, where they found Etheridge. He was arrested and eventually led the police to a canal near the Detroit River where Mercer's body was located.

Dr. Robert Kurtzman of the Wayne County Medical Examiner's office testified that the cause of Mercer's death was drowning. Although the examination revealed a compression of the neck, on the basis of the amount of water in Mercer's lungs, Kurtzman believed that Mercer was alive at the time he was placed in the water.

Etheridge, Sanders, and Stoner were charged with first-degree murder and felony murder, MCL 750.316; MSA 28.548, and kidnapping, MCL 750.349; MSA 28.581, in connection with Mercer's death.[1] The defendants were tried jointly. The jury found Etheridge and Sanders guilty of first-degree murder and felony murder. Stoner was acquitted. Defendants Etheridge and Sanders were sentenced only on the first-degree murder charge and re-

[1] The kidnapping charge was dismissed before trial.

ceived the mandatory term of life imprisonment without possibility of parole.

Etheridge and Sanders now appeal, raising several claims of error.

## I

Both Etheridge and Sanders argue that the admission at trial of the redacted confessions of their codefendants denied them their right to confrontation as guaranteed by US Const, Am VI and Const 1963, art 1, § 20.

The confessions of Etheridge, Sanders, and Stoner were read into the record and admitted as evidence at trial. The confessions were redacted so that the names of the codefendants were replaced by blanks. Before each statement was read into the record, the trial court gave a cautionary instruction to the jury that it was to consider the statement only against the defendant making the statement and not against the other defendants. The instruction was repeated at the end of the trial. None of the defendants testified at trial.

A defendant is deprived of his Sixth Amendment right of confrontation when a codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant. *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968). In *Cruz v New York,* 481 US 186; 107 S Ct 1714; 95 L Ed 2d 162 (1987), the Court held that the *Bruton* rule applied even in situations where the defendant's own confession, corroborating that of his codefendant, is introduced as evidence against him. However, the defendant's confession may be considered on appeal in assessing whether any Confrontation Clause violation was harmless. *Id.* at 194.

However, the Court in *Richardson v Marsh,* 481 US 200; 107 S Ct 1702; 95 L Ed 2d 176 (1987), held that the Confrontation Clause is not violated by the admission of a confession of a nontestifying codefendant that has been redacted to eliminate not only the defendant's name, but any reference to the defendant's existence. The Court in *Richardson* expressed no opinion regarding the admissibility of a confession in which the defendant's name has been replaced by a symbol or a neutral pronoun. *Id.* at 211, n 5.

The admissibility of the confession of a nontestifying codefendant in which the other defendants' names have been replaced by a blank, such as in the present case, was recently addressed by the Michigan Supreme Court in *People v Banks,* 438 Mich 408, 420; 475 NW2d 769 (1991), in which it stated:

> In cases such as the one before us now, where redaction is achieved through replacement of the defendant's name with a neutral pronoun or "blank," the ease with which a jury will be able to fill in a blank will vary from case to case, depending upon the overall evidentiary context in which it is introduced to the jury. A rule of admissibility per se is simply not appropriate for the form of redaction used in the case at bar.

The Court went on to hold:

> If a "substantial risk" exists that the jury, despite cautionary instructions, will consider a codefendant's out-of-court statement in deciding the defendant's guilt, the statement—even though redacted to delete the defendant's name—will be rendered inadmissible at a joint trial. *Bruton, supra,* p 126. [*Id.* at 421.]

In *Banks,* the prosecution charged that the de-

fendant was the one who shot the victim and that his codefendants aided and abetted him. The defendant testified at trial and denied that he was present at the scene of the shooting. The Court found that the defendant's testimony was directly contradicted by the statements of his codefendants in which they both denied being involved in the shooting, but indicated that a third person was in the car with them and that person left the car and began shooting. The Court found:

> This "third person" and his actions were so described as to leave no doubt that it was the third person on trial—the defendant. The defendant rightfully complains that he might as well have been mentioned by name in each of the two statements . . . . *Id.* at 423.

The Court concluded that the closing arguments of the prosecutor and codefendants' counsel that urged the jury to use the nontestifying codefendant's statements against the defendant effectively undid any of the trial court's cautionary instructions.

We believe that the present case is distinguishable from *Banks.* In the present case, all three defendants gave statements that were redacted and admitted at trial. Although each defendant admitted that he was present at the time Mercer was taken to the river and drowned, each denied drowning him. Etheridge's statement read, in pertinent part:

> Me, _____, and _____ we carried that guy down the back stairs and opened the trunk and we put him in the trunk. I got into the back _____ got into the back. _____ drove and the other guy got in the front passenger seat. _____ drove down behind the school off Essex and I think

Continental. _____ drove up to a dark area and popped the trunk. Me and _____ took the guy out of the trunk and took him through the fence and walked about ten feet and slid down a muddy hill to the edge of the water and _____ held him under the water, accept [sic] the guy I don't know.

Sanders' statement read, in pertinent part:

I drove down some street, I think it was Essex and _____ said pull in this drive that led up to a bridge, I did and _____ said open the trunk and _____ and _____ got Bill out of the trunk. _____ told me to go park the car on the street and walk back over to where I dropped them off. _____ and _____ carried Bill down this pathway that led to the lake. I did what they told me to do and I came back and they had Bill in the water drowning him. Then _____ said they were going to tie Bill under the water to a platform. After he Bill was drowned, _____ told me to hold Bill's feet or head underneath the water while he tied Bill to the platform.

The pertinent part of Stoner's statement read:

_____ stopped the car. _____ and _____ got out of the car, _____ and I stayed in the car. _____ and _____ went back and opened up the trunk. They took the guy out of the trunk. They took the guy—they took the guy out of the trunk. He was still tied up. Then the three of them started walking toward the water. It was _____, _____ and the guy who was tied up. They went down the side of this little hill and I couldn't see them anymore. They were gone six, seven maybe ten minutes. Then just _____ and _____ came back to the car. I just knew that they had killed the guy.

We do not believe that the statements describe

the actions of the parties to such an·extent that there is no doubt about the identities of the persons referred to by the blanks. Although there were three defendants on trial, two statements clearly indicate that a fourth person was also involved.[2] Thus, unlike the situation in *Banks,* neither Etheridge nor Sanders is clearly implicated in the statements of their codefendants.

The prosecutor in this case, although sometimes referring to "their statements," asked the jury to consider the statements individually. Although, for the most part, the prosecutor in her closing argument used a statement only against the defendant who had made it, she did combine the statements when she was arguing that Mercer was alive when he was put in the water. Additionally, during his opening statement and closing argument, Sanders' attorney made some references that filled in some of the blanks for the jury.

However, even if we were to find that under the circumstances of this case there was a "substantial risk" that the jury, despite the cautionary instructions, considered the codefendants' out-of-court statements in deciding Etheridge's and Sanders' guilt, we conclude that any error was harmless beyond a reasonable doubt. *Id.* at 427.

Valerie Cross testified at trial that Sanders told her he was going to kill Mercer. She testified that Sanders was present when Mercer was taken out of the apartment and that he got into the driver's seat of the car after Mercer was put in the trunk. Sanders' girl friend testified that Sanders took her to the site where the body was and, when she asked why Mercer was killed, Sanders said, "Because he was a whore." More importantly, Sanders, in his own statement, admitted that he took Mer-

---

[2] The fourth person may have been Mario, who Cross testified was present in her apartment when Sanders arrived with Mercer.

cer to the apartment in order to have him "beat up" for stealing $125. He also stated that he drove the car after Mercer was put in the trunk and that he asked if they were going to Belle Isle to "blow his head off." He drove the car to the water and opened the trunk. Although Sanders denied drowning the victim, there was overwhelming evidence that he performed acts that aided and assisted the commission of Mercer's murder. See *People v Genoa,* 188 Mich App 461, 463; 470 NW2d 447 (1991).

We reach the same conclusion with regard to Etheridge. Valerie Cross testified that Etheridge came into the apartment and began cursing at Mercer and she heard Mercer pleading for his life. Etheridge, in his statement, admitted that he tied Mercer's hands behind his back, helped carry him down the stairs, and put him in the trunk. He also admitted that he helped take Mercer out of the trunk and carry him down a hill to the edge of the water. Valerie Cross also testified that when Etheridge returned to the apartment, his shirt was soaking wet. Accordingly, we conclude that any error in the admission of the codefendants' statements was harmless.

II

Etheridge argues that he was denied his right to a fair trial because the trial court denied his motion for a separate trial and failed to grant severance when it became clear during the trial that Sanders was claiming that he acted under duress because of Etheridge's threats.

There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial. *People v Ander-*

*son,* 166 Mich App 455, 480; 421 NW2d 200 (1988).
The decision whether to hold separate trials is
within the discretion of the trial court and will not
be reversed on appeal absent an abuse of that
discretion. *People v Hicks,* 185 Mich App 107, 117;
460 NW2d 569 (1990). The burden is on the ac-
cused to make an affirmative showing that a sub-
stantial right will be prejudiced in a joint trial. *Id;*
*People v Greenberg,* 176 Mich App 296, 303-304;
439 NW2d 336 (1989).

We conclude that the trial court did not abuse
its discretion in denying Etheridge's motion for
separate trials. Etheridge did not meet his burden
of making an affirmative showing that any sub-
stantial right would be prejudiced in a joint trial.
In his motion for a separate trial, Etheridge
merely made a conclusory statement of antagonis-
tic defenses without submitting an affidavit defin-
ing the inconsistencies between the defenses. See
*People v Byrd,* 133 Mich App 767, 776-777; 350
NW2d 802 (1984); *Anderson, supra* at 481. Fur-
thermore, Etheridge was not prejudiced by the
joint trial. Although Sanders' defense counsel ar-
gued that Sanders was forced to participate in the
murder, the defense of duress is not exculpatory
and could not shift blame from Sanders to Ethe-
ridge. (See VI, *infra.*) Moreover, Etheridge incrimi-
nated himself in his own statement, at least to the
extent of establishing him as an aider and abettor.

### III

Both Etheridge and Sanders argue that there
was insufficient evidence presented to bind over
them to the circuit court on the charges of first-
degree murder and felony murder. ·

It is the statutory duty for a magistrate to bind
over a defendant for trial if it appears that a

felony has been committed for which there is probable cause to charge the defendant. *People v Hill,* 433 Mich 464, 469; 446 NW2d 140 (1989); MCL 766.13; MSA 28.931. Although guilt beyond a reasonable doubt is not necessary, there must be evidence on each element of the crime charged or evidence from which the elements could be inferred. It is not the magistrate's function to discharge the accused if the evidence conflicts or raises a reasonable doubt with regard to guilt. Such questions are for the trier of fact. *Id.*

The circuit court may reverse the district court's decision only if it appears that there was an abuse of discretion. *People v Flowers,* 191 Mich App 169, 174; 477 NW2d 473 (1991). This Court also reviews the magistrate's decision for an abuse of discretion. *Id.*

We conclude that the magistrate did not abuse his discretion in binding over defendants on the charge of first-degree murder. Evidence was presented at the preliminary examination from which the elements of deliberation and premeditation could be inferred. See *People v Harris,* 190 Mich App 652, 657; 476 NW2d 767 (1991).

Defendants also argue that the district court abused its discretion in binding over them on the felony murder charge on the basis of the underlying crime of the larceny of Mercer's car, because Mercer had given Sanders permission to use the car. Although the testimony presented at the preliminary examination established that Mercer gave Sanders permission to take his car when they first arrived at the apartment, there was testimony that defendants subsequently placed Mercer in the trunk of the car and transported him away from the apartment building and that Sanders was driving Mercer's car the day after the incident. Accordingly, we believe that there was evidence

presented at the preliminary examination from which it could be inferred that Mercer's car was taken without consent. See *People v Anderson,* 7 Mich App 513; 152 NW2d 40 (1967).

IV

Etheridge asserts that the trial court erred in not giving his requested instruction on the crime of manslaughter. We disagree.

A homicide may be reduced to voluntary manslaughter if the circumstances surrounding the killing demonstrate that malice was negated by adequate and reasonable provocation, that the killing was done in the heat of passion, and that there was not a lapse of time during which a reasonable person could control his passions. *People v Pouncey,* 437 Mich 382, 388; 471 NW2d 346 (1991); *Harris, supra* at 661. Because voluntary manslaughter is a cognate lesser included offense of murder, a trial court must instruct on manslaughter if the evidence presented at trial could support a conviction of the lesser offense. *Pouncey, supra* at 387.

In the present case, the evidence introduced at trial did not support a finding that Etheridge acted in the heat of passion, with adequate provocation, and without a lapse of time during which he could have controlled his passions. Accordingly, we conclude that the trial court was not required to instruct the jury on voluntary manslaughter.[3]

[3] Defendant challenges the trial court's refusal to instruct on manslaughter. However, he does not specify, and we cannot tell from the record, whether he requested an instruction on voluntary manslaughter, involuntary manslaughter, or both. Although it seems likely that defendant is referring to voluntary manslaughter, we would also find that the offense of involuntary manslaughter was not supported by evidence presented at trial. See *People v Zak,* 184 Mich App 1, 6; 457 NW2d 59 (1990).

V

Etheridge's last argument is that he was denied a fair trial because the prosecutor made improper comments during closing argument. Etheridge cites two instances in the prosecutor's closing argument where she allegedly urged the jury to consider the defendants' statements collectively. Defendant did not object to these statements. Accordingly, appellate review is precluded in the absence of manifest injustice. *People v Mack,* 190 Mich App 7, 19; 475 NW2d 830 (1991). There is no manifest injustice in the present case. We reviewed the prosecutor's comments in this regard when we considered the admission of the redacted statements of the codefendants, and we conclude that any error was harmless beyond a reasonable doubt.

With regard to the other comments cited by Etheridge, we have reviewed the pertinent portion of the record and conclude that these remarks did not deny the defendant a fair and impartial trial. *Id.*

VI

Defendant Sanders argues that the trial court erred in denying his requested instruction on duress. We disagree.

Jury instructions must include all elements of the charged offense and must not exclude material issues, defenses, and theories if there is evidence to support them. *Harris, supra* at 664. However, duress is not a valid defense to homicide. *People v Dittis,* 157 Mich App 38, 41; 403 NW2d 94 (1987); *People v Feldmann,* 181 Mich App 523, 532; 449 NW2d 692 (1989); *People v Travis,* 182 Mich App 389, 392; 451 NW2d 641 (1990).

VII

Lastly, defendant Sanders argues that the trial court erred in denying his motion to suppress his statement. Defendant argues that his statement was not voluntary because "there was an implicit promise reasonably understood by him as a promise of leniency."

The issue of voluntariness is a question of law for the court's determination. *People v Walker (On Rehearing)*, 374 Mich 331, 338; 132 NW2d 87 (1965). The prosecution has the burden of proving voluntariness by a preponderance of the evidence. *Mack, supra* at 17-18. In reviewing the trial court's findings, this Court examines the entire record and makes an independent determination of voluntariness. However, this Court, recognizing the trial court's superior ability to view the evidence, gives deference to the trial court and will not reverse the trial court's findings unless they are clearly erroneous. *Id.*

The trial court's finding that Sanders' confession was voluntary was not clearly erroneous. The totality of circumstances surrounding the confession indicates that it was freely made. See *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). Although Sanders testified that the police officer who questioned him told him that if he gave a statement, the officer would see to it that Sanders got a lesser charge, the police officer denied making any promises of leniency. The trial court chose to accept the testimony of the police officer and found that Sanders' statement was voluntary. We defer to the trial court's superior ability to judge the credibility of the witnesses. *Mack, supra* at 17-18.

Docket No. 109515 is affirmed.

Docket No. 110214 is affirmed.