**Donald J. GIMOTTY, Petitioner–Appellant,**

v.

**Frank ELO, Respondent–Appellee.**

No. 99–2079.

United States Court of Appeals, Sixth Circuit.

April 25, 2002.

Before SILER and CLAY, Circuit Judges, and GRAHAM,* District Judge.

GRAHAM, District Judge.

This is an appeal from the denial of a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner–Appellant Donald J. Gimotty was convicted by a jury in the Circuit Court of Oakland County, Michigan on March 31, 1994, of one count of first degree felony murder, one count of fleeing a police officer result-

ing in serious bodily injury, one count of conspiracy to commit first-degree retail fraud, one count of first-degree retail fraud, and one count of felonious driving. Petitioner was sentenced to life imprisonment for the felony murder conviction, two to four years of imprisonment for the fleeing conviction, and one to two years of imprisonment for the conspiracy, retail fraud, and felonious driving convictions.

Petitioner pursued a direct appeal from his conviction to the Michigan Court of Appeals. In a decision rendered on April 9, 1996, that court affirmed the petitioner's convictions with the exception of the conviction and sentence for retail fraud, the underlying felony for the felony murder charge, which was vacated on double jeopardy grounds. *See People v. Gimotty,* 216 Mich.App. 254, 549 N.W.2d 39 (1996). The Michigan Supreme Court denied petitioner's request for leave to appeal on March 14, 1997.

Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan on November 6, 1997. Petitioner claimed that the trial court denied him due process of law when it refused to charge the jury on the defense of duress. Petitioner argued that the refusal of the trial court to charge the jury on the duress defense denied him the right to present that defense and had the effect of directing a verdict on the charge of felony murder. In a report and recommendation filed on May 28, 1999, the magistrate judge recommended that the petition be denied. On August 31, 1999, the district court accepted the report and recommendation of the magistrate judge and dismissed the peti-

* The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

tion. Petitioner filed a notice of appeal from this decision on September 20, 1999.

In a habeas action filed pursuant to 28 U.S.C. § 2254, this court reviews *de novo* the legal conclusions involved in the district court's decision to deny the writ, and reviews for clear error its findings of fact. *See Lucas v. O'Dea,* 179 F.3d 412, 416 (6th Cir.1999). The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective prior to the filing of the instant petition, apply to this case. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a writ of habeas corpus shall not issue unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The provisions of § 2254(d)(1) govern the review of legal error, whereas claims of factual error are subjected to the standard enunciated in § 2254(d)(2). *Weaver v. Bowersox,* 241 F.3d 1024, 1029 (8th Cir. 2001).

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of

the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Ibid.* A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.Ct. 1495. Rather, a state court's application of federal law is unreasonable "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker v. Yukins,* 199 F.3d 867, 872 (6th Cir.1999).

Claims of error in making factual determinations are addressed under § 2254(d)(2). In addition, 28 U.S.C. § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

■ Petitioner claims that the trial court committed error in refusing to instruct the jury on the defense of duress, and in instructing the jury that duress was not a defense to any of the charges against petitioner. Petitioner argues that he was denied due process of law because the jury was unable to consider duress as a defense. The trial court concluded that duress was not a defense in this case and instructed the jury to that effect. The Michigan appellate court concluded that duress was not a defense to the felony murder charge under Michigan law, and further held that the evidence presented at trial did not warrant an instruction on duress. Since these rulings involve questions of law, *see, e.g., United States v. Jankowski,* 194 F.3d 878, 882 (8th Cir.1999)(whether there is sufficient evidence to charge the jury on duress defense is a question of law); *United States v.*

*Charmley,* 764 F.2d 675, 676 (9th Cir. 1985)(same) they are properly reviewed under § 2254(d)(1).

The Due Process Clause guarantees criminal defendants the right to be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). However, this does not mean that the states are precluded from placing reasonable limitations on this right. *See, e.g., United States v. Scheffer,* 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)(defendant's right to present evidence in his defense subject to reasonable restrictions which the states may impose). States are free to define the elements of, and defenses to, crimes. *See Apprendi v. New Jersey,* 530 U.S. 466, 484–87, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *McMillan v. Pennsylvania,* 477 U.S. 79, 84–86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).

We note that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A petitioner alleging error in a jury instruction must establish not only that the instruction was undesirable or erroneous, "but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The issue is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. 396. *See also Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)(lack of a particular instruction must impugn fundamental fairness of trial).

The starting point for this due process analysis is whether the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law. *Davis v. Strack,* 270 F.3d 111, 123 (2d Cir.2001); *see Barker,* 199 F.3d at 876. In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional. *Davis,* 270 F.3d at 123 n. 4.

Michigan recognizes the affirmative defense of duress in some circumstances where the crime committed avoids a greater harm. *People v. Lemons,* 454 Mich. 234, 562 N.W.2d 447 (1997). However, several Michigan courts have held that duress is not a defense to homicide. *See People v. Moseler,* 202 Mich.App. 296, 508 N.W.2d 192 (1993)(duress not a defense to involuntary manslaughter); *People v. Etheridge,* 196 Mich.App. 43, 56, 492 N.W.2d 490 (1992)(duress defense not available in case where defendant charged with both premeditated and felony murder); *People v. Travis,* 182 Mich.App. 389, 392, 451 N.W.2d 641 (1990)(duress not a defense to homicide); *People v. Feldmann,* 181 Mich. App. 523, 532, 449 N.W.2d 692 (1989)(duress not a defense to first or second degree felony murder); *People v. Dittis,* 157 Mich.App. 38, 41, 403 N.W.2d 94 (1987)(duress not a defense to homicide). "The rationale underlying the common law rule is that one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead." *Dittis,* 157 Mich.App. at 41, 403 N.W.2d 94. In keeping with these precedents, the Michigan courts concluded that petitioner was not entitled to a jury instruction on the defense of duress.

The elements of felony murder under Michigan law are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [*i.e.,* malice]; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in the statute. Thus, the commission of the retail fraud in this case was an element of the offense of felony murder under Michigan law.

Petitioner argues that he was entitled to raise a duress defense to the offense of retail fraud,[1] the felony element of the murder charge. However, petitioner points to no Michigan law holding that duress, while not a defense to felony murder, would nonetheless be a defense to any criminal activity which results in the death of another. The *Dittis* rationale for not permitting duress as a defense to homicide would extend not only to direct acts of homicide, but also to the commission of the criminal acts underlying felony murder which create a high risk of death or serious physical harm and which in fact result in death. In *Moseler,* 202 Mich.App. at 299, 508 N.W.2d 192, the court found that duress was not a defense to involuntary manslaughter, even though the defendant argued that she ran red lights because she was being chased by her boyfriend and feared for her own safety. There is also nothing in Michigan law which would preclude the state courts in this case from extending the rationale behind excluding duress as a defense in homicide cases to the retail fraud charge underlying the felony murder count, and even to the felonious driving and fleeing charges, all of which resulted in death in this case. The decision of the Michigan courts that duress was not a defense to the charges in petitioner's case was not contrary to Michigan law, and the trial court's refusal to charge on duress in regard to these charges did not violate due process, nor did it result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

■ In upholding the trial court's decision not to charge on duress, the Michigan appellate court also relied on the additional ground that the evidence presented did not warrant such a charge.[2]

A defendant "is entitled to an instruction as to any recognized defense *for which there exists evidence sufficient for a reasonable jury to find in his favor.*" *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988)(emphasis

---

1. Defense counsel requested an instruction that petitioner "in fleeing, acted under duress." Defense counsel did not specifically ask the trial court to give a duress instruction as a defense to the charge of retail fraud. Rather, petitioner denied any involvement in this offense at trial. A specific request for such a charge would have been properly denied under Michigan law in light of petitioner's explicit denial of involvement in this offense. *See Lemons,* 454 Mich. at 251, 562 N.W.2d 447 (denial of crime negated claim that acts were justified by actual fear or that acts were committed to avoid a greater harm). Petitioner did argue specifically before the Michigan appellate court that duress should be a defense to all of the charges

against him, including the retail fraud element of the felony murder charge, and that the trial court's failure to instruct the jury on the duress defense was error. The court of appeals rejected the petitioner's argument, noting that his claim was "without merit." *Gimotty,* 216 Mich.App. at 257, 549 N.W.2d 39.

2. In reaching this conclusion, the court of appeals specifically referred only to the fleeing charge, *see Gimotty,* 216 Mich.App. at 257, 549 N.W.2d 39, but the reasoning of the court would apply equally to the other charges against the petitioner.

supplied); *see Barker*, 199 F.3d at 876 (due process violation found where petitioner denied self defense instruction which was required under state law given the existence of "a sufficient evidentiary basis" for instruction). However, a court need not instruct the jury on the defense of duress or justification if the evidence is insufficient as a matter of law to support the defense. *United States v. Bailey*, 444 U.S. 394, 412–415, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). *See also United States v. Morgan*, 216 F.3d 557, 566 (6th Cir.2000)(instruction which lacks evidentiary support or is based on speculation should not be given); *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir.1990)(citing *Bailey* in holding that district court did not err in refusing to instruct jury on defense of justification if evidence could not support a verdict based on it).

Thus, no due process violation occurs due to the failure to give an instruction on a defense where there was insufficient evidence as a matter of law to support such a charge. *See Neuman v. Rivers*, 125 F.3d 315, 323–24 (6th Cir.1997)(denial of writ upheld where district court properly found that there was insufficient evidence to warrant instructions on self defense and intoxication); *United States v. Sarno*, 24 F.3d 618, 621 (4th Cir.1994)(citing *Bailey* in holding that where evidence insufficient as a matter of law to support duress defense, no due process violation results from trial court's refusal to instruct jury on defense)(*cited in United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 482 (6th Cir. 1999)); *Allen v. Morris*, 845 F.2d 610, 616–17 (6th Cir.1988)(failure to give instruction on self defense did not result in due process violation where evidence was insufficient to warrant instruction).

In order to properly raise the defense of duress under Michigan law, a defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of duress are present, namely: (1) the threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm; (2) the conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant; (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act; and (4) the defendant committed the act to avoid the threatened harm. *Lemons*, 454 Mich. at 246–247, 562 N.W.2d 447.

Evidence presented at trial revealed that on July 24, 1993, Calvin Billingslea entered a women's clothing store in Royal Oak, Michigan and grabbed six dresses from a rack. He fled to a grey Ford Thunderbird driven by petitioner and got in the passenger seat. Petitioner then drove the vehicle from the shopping center parking lot and proceeded onto a public street. At the next intersection, Billingslea got out of the car and removed black tape from the license plate, then re-entered the car. Witnesses notified the police and described the getaway vehicle. Police officers eventually located the vehicle and two cruisers fell in behind the vehicle in pursuit. The vehicle picked up speed, ran through stop signs and red lights at intersections, and crossed over the median lines, driving the wrong way against opposing traffic. Police from three jurisdictions continued to pursue the vehicle, which proceeded at a rate up to ninety or one hundred miles per hour, weaving through heavy traffic without any attempt to brake. The vehicle driven by the petitioner entered the intersection at 15 Mile and Dequindre Roads against a red light and broadsided another vehicle, causing it to become airborne. Petitioner was taken into custody at the scene. A three-year-old passenger in the other vehicle died of injuries sustained in the collision.

Kenneth Denny, one of petitioner's fellow jailhouse inmates, testified that approximately a month after the collision, petitioner told him that he and Billingslea were looking for a way to get some money to buy drugs. After they left the shopping center with the stolen dresses and observed a police officer pull in behind them, Billingslea told petitioner not to stop because he was on parole. Petitioner told Denny that he was driving fast, through red lights and stop signs. Petitioner further stated that the police began to fall behind, and that he felt he could get away if he made it through the Dequindre Road intersection. Petitioner stated that he approached at eighty miles per hour, knowing the light was red. Denny further testified that Billingslea congratulated petitioner on his driving skills and that they "slapped high-fives."

Petitioner testified that he did not have any knowledge about Billingslea's plan to steal clothing, and that when Billingslea entered the car, he kept telling petitioner to take off. At the first light, Billingslea left the car, then returned. Petitioner stated that he did not drive off at that time because he knew the dresses were in his car and he did not want to be a part of the theft. Petitioner claimed that he obeyed traffic signals and adhered to the speed limit for two miles. Petitioner claimed that when police cruisers pulled up behind him with flashing lights, he told Billingslea that he was going to stop, but that Billingslea punched him hard on the side of the head and told petitioner to drive, holding his fist to petitioner's head. Petitioner stated that he found Billingslea to be "very intimidating" and that he was "scared to death."

Petitioner further testified that Billingslea directed petitioner to drive through stop signs. At one intersection, petitioner slowed to five miles per hour, and police cars pulled up beside him carrying officers with guns drawn. Petitioner testified that Billingslea grabbed the steering wheel and steered the vehicle between two other cars, then yelled at him. Petitioner stated he tried to stop, but Billingslea threatened him and struck him three times. Petitioner stated that he was intimidated by Billingslea, who was twice his size. However, petitioner acknowledged that Billingslea did not have a weapon.

The Michigan appellate court found that the evidence presented did not establish that petitioner's flight "was necessitated by conduct that would cause reasonable persons to fear death or serious bodily harm." *Gimotty*, 216 Mich.App. at 257, 549 N.W.2d 39. Petitioner has not demonstrated that this legal conclusion was incorrect in light of the totality of the evidence presented and the requirements for showing duress under Michigan law. There is no evidence as to why petitioner could have reasonably felt he was in imminent danger of death or serious bodily harm due to a few blows to the head which were apparently not hard enough to impair his driving in any way, in light of the near proximity to police cruisers and the fact, known to him, that his passenger was not armed with a weapon. Since, under *Mathews*, due process does not require that an instruction be given on a defense when the evidence is insufficient to warrant such an instruction as a matter of law, petitioner has demonstrated no grounds for relief for legal error under § 2254(d)(1).

Petitioner argues that his claim is supported by *Barker v. Yukins*. However, *Barker* is distinguishable. In *Barker*, this court addressed the impact of the failure to give an instruction on self defense. The Michigan Supreme Court specifically found that the trial court committed error in refusing to give the instruction. *Barker*, 199 F.3d at 871. The Michigan Supreme

Court concluded that this error was harmless because no reasonable juror could find that the petitioner acted in self defense. However, in reaching this conclusion, that court exceeded its authority and improperly weighed the evidence. *Id.* at 874. Since, in our view, the record in *Barker* included sufficient evidence which, if believed by the jury, could have supported a finding of self defense, we concluded that the failure to give the instruction in that case deprived the petitioner of her due process right to present a defense. *Id.* at 874, 876.

In the present case, there is no indication that the Michigan appellate court engaged in any factfinding or weighing of the evidence whatsoever. Rather, the wording of the opinion suggests that the court of appeals considered petitioner's trial testimony and assumed it to be true for purposes of determining whether the evidence was sufficient as a matter of law to warrant an instruction. Petitioner has offered no basis for concluding that the state appellate court engaged in improper factfinding, inaccurately read the record in making its legal determination, or failed to consider the complete record in a light most favorable to petitioner in arriving at that decision. Thus, petitioner has demonstrated no grounds for relief for erroneous factual findings under § 2254(d)(2). *See Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir.2001)("*Mathews* does not control if we are given no basis upon which to overcome the state court's findings that there was *not* sufficient evidence to support the defendant's theory[.]")

Petitioner has failed to demonstrate that the state court proceedings in his case resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The district court's dismissal of the § 2254 petition is hereby AFFIRMED.