# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RICHARD ALLEN ALAKSON, III,

        Defendant-Appellant.

UNPUBLISHED
October 23, 2014

No. 313900
Wayne Circuit Court
LC No. 12-005229-FC

Before: FITZGERALD, P.J., and WILDER and OWENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of armed robbery, MCL 750.529, two counts of felonious assault, MCL 750.82(1), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to concurrent terms of six to 30 years' imprisonment for each of the armed robbery convictions, and two to four years' imprisonment for each of the felonious assault convictions, and to a consecutive term of two years' imprisonment for the felony-firearm conviction. We affirm.

Defendant argues that his trial counsel was ineffective for failing to move to sever his trial from the trials of his codefendants, or at a minimum, to move for separate juries.[1] We disagree. Because defendant did not move for a new trial or an evidentiary hearing with the trial court, this issue is unpreserved. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). When an ineffective assistance of counsel claim is unpreserved, "this Court's review is limited to mistakes apparent from the record." *Id*. We review findings of fact for clear error and questions of law de novo. *Id*.

Both the United States Constitution and the Michigan Constitution guarantee criminal defendants the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. To establish ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness under

---

[1] Defendant's codefendants, Christopher Bereta and Calvin Bruning, were acquitted of the same charges by the same jury.

prevailing professional norms, and (2) that the deficient performance prejudiced the defense. *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prove that the deficient performance prejudiced the defense, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

As stated, defendant argues that his trial counsel was ineffective for failing to move to sever his trial from the trials of his codefendants or at least request separate juries. "There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial." *People v Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). A trial court must sever the trial of codefendants on related offenses only when the defendant shows that "severance is necessary to avoid prejudice to substantial rights of the defendant." MCR 6.121(C); *Etheridge*, 196 Mich App at 53. Under MCR 6.121(D), a trial court has the discretion to grant a request for severance "on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." When determining if severance is appropriate, a trial court may consider factors like "the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence" and "the convenience of witnesses." MCR 6.121(D).

To show that severance is necessary, a defendant must provide the court with a supporting affidavit, or make an offer of proof, "that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994); see also MCR 6.121(C). Such a showing is not made by codefendants' plans to present inconsistent defenses. *Hana*, 447 Mich at 349. "[R]ather, the defenses must be 'mutually exclusive' or 'irreconcilable.' " *Id.* Essentially, the defenses must be such that "a jury would have to believe one defendant at the expense of the other." *Id.* (internal quotation marks and citation omitted). Finally, proper jury instructions can reduce the risk of prejudice resulting from a joint trial. *Id.* at 351; see also *Zafiro v United States*, 506 US 534, 539; 113 S Ct 933; 122 L Ed 2d 317 (1993).

Even assuming that defendant's trial counsel knew what evidence would be presented at trial and what arguments would be made by the prosecutor and other defense attorneys, counsel was not ineffective for failing to move for a separate trial. Defendant contends that severance would have been required under MCR 6.121(C) because his and his codefendants' defenses were mutually exclusive or irreconcilable. In the alternative, defendant argues that it would have been an abuse of discretion under MCR 6.121(D) for the trial court to deny a motion to sever or a motion for separate juries. We disagree.

Defendant's defense was not mutually exclusive or irreconcilable with the defenses of Calvin Bruning and Christopher Bereta. David Vernon Banks's testimony implicated Bereta and Bruning and was silent with respect to defendant. Ryan King's testimony implicated Bereta, Bruning, and defendant. Caitlyn Szolach testified that defendant was present and took part in the robbery. She said that Bereta and Bruning were not present and had nothing to do with the robbery. Caitlin Smith's testimony placed defendant at the scene of the robbery. She claimed

that she did not see any robbery or assault occur, but she assumed that the three guys that ran up behind her toward King's car were defendant, "Mikey," and "Justin." Smith denied ever meeting Bereta or Bruning and said they were not at the trailer park the night of January 28, 2012, which is when the robbery occurred. It was possible for a jury to conclude that defendant, Bereta, and Bruning all took part in the assault and robbery, since all witnesses agreed that it was perpetrated by three males. A jury could disbelieve the testimony of Szolach and Smith that Bereta and Bruning were not involved. It would not have been necessary for the jury to acquit Bereta and Bruning at the expense of defendant, or vice versa, so their defenses were not mutually exclusive. See *Hana*, 447 Mich at 349.

Furthermore, we note that these witnesses were not presented by any of the defendants. A defendant can show that severance is necessary to rectify potential prejudice by demonstrating *codefendants' plans* to present irreconcilable defenses. See *Hana*, 447 Mich at 346. These witnesses, and their conflicting testimony, were all presented by the prosecution. To the extent that the attorneys for Bruning and Bereta did point fingers at defendant during their closing arguments, such arguments do not constitute mutually exclusive or irreconcilable defenses:

> "It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." [*Hana*, 447 Mich at 349-350, quoting *State v Kinkade*, 140 Ariz 91, 93; 680 P2d 801 (1984).]

Bereta's and Bruning's attorneys also hardly discussed defendant or argued that he was guilty during their closing arguments. Bereta's attorney did talk about Szolach's testimony and said that both the prosecutor and defendant's attorney wanted to discredit her. Bereta's attorney asserted, "Mr. Dunn [defendant's attorney] doesn't want you to believe Caitlyn Szolach or Caitlin Smith because it hurts his client." Bereta's counsel then argued that defendant's attorney tried to ask Szolach a trick question:

> He asked her a trick question: 'Did you tell the detective Reco [defendant], Calvin Bruning, [sic] Chris Bereta walked toward the trailer?' That was his question, trick question. Her response was no, it wasn't Calvin and Chris, they weren't there. She testified that she was 100% sure Mr. Bereta was not there.

This argument does not really implicate defendant. Rather, it appears that Bereta's attorney was focusing on the fact that Szolach has consistently said that Bereta was not at the trailer park when the robbery occurred. This is consistent with the vast majority of the closing argument made by Bereta's attorney. He focused on the inconsistencies in Banks's and King's testimony

and said that they were mistaken in identifying Bereta and Bruning as the perpetrators. He also argued that Szolach and Smith have consistently said that Bereta and Bruning were not present at the trailer park.

Bruning's attorney did not even mention defendant except once, in passing. Instead, Bruning's attorney also argued that Banks's and King's testimony was inconsistent, Szolach was mostly a credible witness, and Bruning and his alibi witnesses were credible. The attorneys for Bruning and Bereta barely pointed fingers at defendant. In addition, while these attorneys were arguing that Szolach was a credible witness, the prosecutor, along with defendant's attorney, was arguing that Szolach was an incredible witness. The prosecutor was trying to rebut Szolach's testimony that Bereta and Bruning were not involved in the robbery. Thus, defense counsel actually had the prosecutor on his side in arguing that Szolach was an incredible witness.

For the foregoing reasons, defendant has not shown that he was entitled to severance or separate juries because his defense was mutually exclusive or irreconcilable from the defenses of his codefendants. Consequently, his trial attorney was not ineffective for failing to move for severance or separate juries. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Finally, even assuming that the trial court would have granted a motion for severance, defendant cannot show that the result of the proceeding would have been different if he had a separate trial or jury. See *Strickland*, 466 US at 694. As discussed above, the arguments made by Bereta's and Bruning's attorneys during their closing arguments were not particularly prejudicial toward defendant. They asserted that Szolach was a credible witness, that the alibi witnesses should be believed, and that the prosecutor failed to prove his case beyond a reasonable doubt. The only mention of defendant or defendant's attorney was made by Bereta's attorney, who brought up defense counsel's conflicting argument that Szolach was an incredible witness who should not be believed.

The jury was instructed that it can choose to believe all, part, or none of a witness's testimony. Thus, the jury could have concluded that Szolach was telling the truth about Bereta and Bruning not being part of the robbery, but lying about defendant's involvement. It was not necessary for the jury to "believe one defendant at the expense of the other[s]." *Hana*, 447 Mich at 349 (internal quotation marks and citation omitted). Furthermore, the jurors were instructed that the attorneys' arguments are not evidence. Regardless of the attorneys' arguments, the jury would have heard Szolach's testimony even if defendant's trial was severed from the trial of his codefendants. Finally, it is improbable that the jury chose to find Szolach credible because of the brief comments made by Bereta's attorney during his closing argument. Thus, defendant was not prejudiced by these comments.

The only other argument made by defendant is that if defendant had a separate trial or a separate jury, then his jury would not have heard Bereta's and Bruning's alibi witnesses, which were prejudicial to defendant. First, Bereta's and Bruning's alibis were not irreconcilable with defendant's alibi. Bereta and defendant both said they were at home, while Bruning said that he was at a friend's house. The jury could have acquitted all three defendants based on their alibis. Second, the jury was instructed that it should determine the guilt or innocence of each defendant

on an individual basis. With such an instruction, along with a proper instruction regarding reasonable doubt, "the jury could reasonably be expected to compartmentalize the evidence pertaining to each defendant." *Hana*, 447 Mich at 356. Jurors are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Thus, defendant has not shown that he was prejudiced by the jury hearing Bereta's and Bruning's alibi defenses.

Affirmed.

/s/ E. Thomas Fitzgerald
/s/ Kurtis T. Wilder
/s/ Donald S. Owens