*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KIJUAN MILLER,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2019

No. 334807
Wayne Circuit Court
LC No. 16-000458-01-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY DULANEY,

        Defendant-Appellant.

No. 334813
Wayne Circuit Court
LC No. 16-000458-02-FC

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendants appeal as of right from their convictions of first-degree home invasion, MCL 750.110a(2), five counts of armed robbery, MCL 750.529, and larceny in a building, MCL 750.360. In Docket No. 334807, we affirm defendant Miller's convictions and sentences. In Docket No. 334813, we affirm in part and remand for further explanation regarding defendant Dulaney's consecutive sentence.

---

[1] *People v Miller*, unpublished order of the Court of Appeals, issued September 27, 2016 (Docket No. 334807); *People v Dulaney*, unpublished order of the Court of Appeals, issued September 27, 2016 (Docket No. 334813).

# I. BACKGROUND

Defendants were convicted of breaking into a home late at night and robbing five occupants of the home at gunpoint. According to witnesses, defendants were two of four intruders who participated in the offense. The other two intruders were never identified. The principal issue at trial was identification.

Defendants were tried jointly, before one jury. At trial, all five robbery victims—Victoria Wyler, Jessica Miller, Jeff Courter, David Willer, and Michael Dambrun—testified that they were familiar with defendants before the offense because defendants lived in the area and had previously been social visitors at the house that was robbed. All five victims identified defendants as two of the participants in the offense. The victims testified that they recognized defendants' voices and body language and heard them refer to each other as "Ant" and "P," which were defendants' nicknames. Ms. Wyler also testified that she saw both defendants' faces, despite the fact that defendants had attempted to cover their faces with their clothing. Neither defendant testified at trial or called any witnesses.

The jury found both defendants guilty of first-degree home invasion, five counts of armed robbery, and larceny in a building. The trial court sentenced defendant Miller to concurrent prison terms of 20 to 40 years for each robbery conviction and two to four years for the larceny conviction, to be served consecutive to a prison term of 5 to 20 years for the home-invasion conviction. The trial court originally sentenced defendant Dulaney to concurrent prison terms of 25 to 40 years for each armed-robbery conviction and two to four years for the larceny conviction, to be served consecutive to a term of 5 to 20 years for the home-invasion conviction. The trial court, however, subsequently resentenced defendant Dulaney to reduced prison terms of 15 to 40 years for each robbery conviction. These appeals followed.

# II. ANALYSIS

## A. DOCKET NO. 334807

### 1. ASSISTANCE OF COUNSEL

On appeal, defendant Miller first argues that he was unconstitutionally deprived of the effective assistance of counsel. A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). To prove the first prong, "[t]he defendant must overcome a strong presumption that counsel's assistance constituted sound trial strategy." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). Regarding the second prong, a defendant is prejudiced if there is a reasonable probability that, "but for defense counsel's errors, the result

of the proceeding would have been different." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

Defendant Miller argues that defense counsel was ineffective for not moving for a separate trial from defendant Dulaney. We disagree. "The decision to sever or join defendants lies within the discretion of the trial court." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682, amended 447 Mich 1203 (1994). "There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial." *People v Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). In light of these considerations, severance is only mandated when the "defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Hana*, 447 Mich at 346; see also MCR 6.121(C). To demonstrate prejudice the defendant must show that the codefendants' defenses are mutually exclusive or irreconcilable or that the joint trial otherwise prevents the jury from making reliable judgments about the codefendants' guilt or innocence. *Id*. at 346, 349.

Here, defendants were charged with the same offenses, they did not have antagonistic defenses, and the prosecutor did not intend to offer statements from either defendant. Neither defendant called any witnesses, and both defendants similarly challenged the credibility and reliability of the identification testimony. Thus, defendant Miller was not entitled to a separate trial and his counsel was not ineffective for failing to make that futile motion. *Sabin*, 242 Mich App at 660.

Defendant Miller also faults his counsel for not offering several pieces of evidence at trial, including telephone records, alibi witnesses, and an identification expert. According to defendant Miller, defense counsel failed to effectively investigate the case or to sufficiently meet with him to develop a cogent trial strategy. The record, however, reveals that defense counsel did meet with defendant Miller before trial. The primary issue here was the perpetrators' identities and defense counsel competently attacked the prosecution's identification evidence. Moreover, defendant Miller has not properly supported his argument that defense counsel failed to investigate the case or present evidence. Defendant Miller has not shown what evidence was available to defense counsel or how this evidence would have been beneficial to his case. Similarly, defendant Miller has not shown how additional meetings with defense counsel would have resulted in a better trial strategy. Thus, defendant Miller's claims of ineffective assistance of counsel are without merit. See *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003) (concluding that the defendant's failure to establish the factual predicate of his claim rendered his argument without merit). To the extent that defendant Miller requests that this case be remanded for an evidentiary hearing[2] on his claims, because he has not shown any likelihood of developing a factual record on remand to support his claims, remand is not warranted. See *People v McMillan*, 213 Mich App 134, 141-142; 539 NW2d 553 (1995).

---

[2] See *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## 2. MOTION FOR MISTRIAL

Next, defendant Miller argues that Judge Callahan erred by denying his motion for a mistrial after Judge Callahan questioned the officer-in-charge, Marcus Ways, and elicited defendant Miller's custodial statement in response to questions submitted by the jury. We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id*. "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *Id*. (internal citations and quotation marks omitted).

After the parties examined Officer Mays at trial, Judge Callahan inquired whether any members of the jury had any additional questions, resulting in the following exchange:

> *THE COURT*: Officer Ways, these additional questions have been asked of you by members of the jury, kindly look at the jury members and I'll ask you the question.
>
> Were you able to interview the suspects in this case?
>
> *THE WITNESS*: Only one suspect I was able to interview.
>
> *THE COURT*: And who was that?
>
> *THE WITNESS*: Mr. Miller.
>
> *THE COURT*: Was that statement documented by you?
>
> *THE WITNESS*: Yes.
>
> *THE COURT*: Was that documented in writing?
>
> *THE WITNESS*: Yes.
>
> *MR. REMSKI [Defendant Miller's counsel]*: Your Honor, can we object. I'll ask the jury be excused.
>
> *THE COURT*: Sure.
>
> *THE DEPUTY*: Please stand.
>
> (*At 12:21 p.m., jury exits*)
>
> *MR. REMSKI*: Begging the Court's indulgence my client has the absolute right to make a decision as to whether or not to testify. You just opened that door on the jury. I move for a mistrial. Now they're going to think that he made a statement and the People do not intend to use it, it was self-serving we know that. I move for a mistrial.

-4-

*MS. BARRETT [Defendant Dulaney's counsel]*:  I would join.

*MR. REMSKI*:  The jury's tainted.

*THE COURT*:  The jury is not tainted.  Motion for a mistrial is denied.

Thereafter, in the presence of the jury, the trial court questioned Officer Mays as follows:

*THE COURT*:  Officer Ways, do you have this statement with you?

*THE WITNESS*:  Yes, I do.

*THE COURT*:  Provide it to him.

*MR. GLYNNE [the prosecutor]*:  May I approach the witness, Judge?

*THE COURT*:  Yes.

*MR. REMSKI*:  Our objection is noted, Your Honor.

*THE COURT*:  Yeah, I think we've already noted it.  What did the Defendant Miller tell you?

*THE WITNESS*:  Do you want me to read it verbatim, sir?

*THE COURT*:  Yes, verbatim.

*THE WITNESS*:  It's during the questions and answers style.

"Question:  Do you understand your Constitutional rights?

Answer:  Yes, sir.

Question:  Do you hang out on Grandview near the intersection of Norfolk?

Answer:  I don't hang out but I walk past the area.

Question:  Do you associate with someone that goes by the name of Ant?

Answer:  Yes.

Question:  How do you know Ant?

Answer:  I met Ant walking down the street one day looking for some weed.

Question: On Grandview near Norfolk have you ever been to a house that was occupied with mostly white people with Ant?

Answer: Yes, or answer, yeah.

Question: Did you and Ant ever break into that home together on November 22nd, 2015?

Answer: No, sir. I never have.

Question: Do you have a Facebook page?

Answer: Yes. Maserati Paris.

Question: Anything else you want to add

Answer: No.

Question: Where were you on November 22nd, 2015 at 2:40 a.m.?

Answer: I was at my house with my whole household."

Defendant Miller argues that this line of questioning introduced a statement that neither he nor the prosecution intended to introduce. Nonetheless, the prosecutor did not object to the juror's question. Moreover, juror questions are not limited to clarifying evidence already introduced by the parties. See *People v Stout*, 116 Mich App 726, 733; 323 NW2d 532 (1982). The question posed by the juror was substantively admissible and did not indicate that the juror held any bias. See *id*. Judge Callahan's decision to allow the question was therefore not outside the range of principled outcomes.

Defendant Miller also argues that Judge Callahan erred by not informing the jury that the statement was not recorded as required by MCL 763.8. See MCL 763.9 (requiring the trial court to inform the jury of a failure to record a defendant's statement in accordance with MCL 763.8). Nonetheless, defendant Miller acknowledged in his brief that it is "unclear" whether the statement was properly recorded. Thus, because defendant Miller has failed to establish the factual predicate for his argument that the trial court should have given an instruction under MCL 763.9, his argument is without merit. See *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (concluding that an appellant may not leave it to this Court to discover the basis for his claims).

### 3. JUDICIAL MISCONDUCT

Defendant Miller argues that Judge Callahan's conduct during trial demonstrated his bias in favor of the prosecution and against defendant Miller, thereby denying him a fair trial. "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Criminal defendants have a right to a fair and impartial jury trial. *Id*. at 170. "A trial

-6-

judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality." *Id*. at 170-171. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. When reviewing the conduct of the trial judge, we must consider the "totality of the circumstances," which includes:

> a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. [*Id.* at 172 (internal citations omitted).]

"This list of factors is not intended to be exhaustive." *Id.*

In his appellate brief, defendant Miller presents several examples of Judge Callahan interrupting defense counsel's questioning, interjecting his own objections to witness testimony, and posing questions to witnesses. Defendant Miller argues that these examples demonstrate that Judge Callahan was assuming the role of prosecutor. We disagree. A trial judge "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a). Having reviewed the record, we conclude that Judge Callahan's interjections demonstrate an attempt to ensure the efficient presentation of the evidence within the evidentiary rules. The interjections do not indicate any bias for or against either party.

For example, defendant Miller argues that Judge Callahan's interjection into defense counsel's cross examination of one of the victims, Ms. Wyler, evidences Judge Callahan's bias against defendant Miller. The interjection occurred as follows:

*Q*. And you had had a mutual friend that had brought them to the house and they had partied at your house before, correct?

*A*. I don't understand, that's two questions. You had a mutual friend who brought them over and I don't understand which you want me to answer.

*Q*. You're pretty intelligent.

*THE COURT*: Well, not's [sic] go into explanations here. Let's take one question at a time. So it's a compound question, break it down.

*MR. REMSKI*: Thank you. The witness's objection is noted.

*THE COURT*: No, no, no, just break it down.

*MR. REMSKI*: Thank you.

*THE COURT*: I've made a ruling on it so now just follow what I just said.

*MR. REMSKI*: Thank you.

*THE COURT*: Simply.

*BY MR. REMSKI*:

Q. So they had both been at your house before a number of times, right?

A. Correct.

Q. And the acquaintance that brought them to your house was another previous roommate, yes?

A. Yes.

Q. And how many times had they been to your house before?

A. Numerically, I don't know.

Q. Five, six, ten, 20, 30, 50, 100, 200?

*THE COURT*: She's already indicated she didn't know, move on to something else.

*BY MR. REMSKI*:

Q. Can you provide us with any assistance in terms of a number?

A. No.

Q. None, okay, thank you. And when you saw them you saw —

*THE COURT*: Mr. Prosecutor, I expect you to open your mouth occasionally.

*MR. GLYNNE*: Yes, Judge, thank you.

*MR. REMSKI*: I think my objection — I'm going to have to object to the Court's interjection. The Court has interjected on probably 80 percent of my questions so far, with all due respect.

*THE COURT*: Well, maybe it was needed.

*MR. REMSKI*: Thank you very much.

*THE COURT*: Please continue.

Judge Callahan's initial interruption in the above exchange was justified because the witness had expressed confusion about how to answer a compound question. Judge Callahan thereafter expressed some annoyance when defense counsel sarcastically responded that "[t]he witness's objection is noted," and admonished defense counsel when he persisted in asking questions that had already been answered. This rebuke of defense counsel, however, was not so severe that it created an appearance of advocacy against defendants. Indeed, Judge Callahan also rebuked the prosecutor for failing to make appropriate objections. On balance, although the above exchange may demonstrate Judge Callahan's irritation with the attorneys, it does not demonstrate bias in favor of any party. Rather, Judge Callahan's comments appear to be intended to ensure the accurate presentation of the witness's testimony.

Defendant Miller also argues that Judge Callahan's bias was demonstrated when Judge Callahan *sua sponte* questioned another victim, Mr. Dambrun, about the psychological impact of the alleged offense:

*THE COURT*: All right. You indicated to us Mr. Dambrun that—the questioning by defense counsel for Mr. Dulaney resurrected, if you will, in your mind what had occurred; is that true.

*MR. DAMBRUN*: Yes, sir.

*THE COURT*: Has this incident in any way, shape or form affected you psychologically or your mental health or anything of this nature?

*MR. DAMBRUN*: No.

*MR. REMSKI*: Your Honor, forgive me. We object.

*THE COURT*: Okay. This objection is overruled. Please answer the question.

*MR. DAMBRUN*: Yes, sir, it has.

*THE COURT*: Have you, since the date on which this incident occurred, November 22nd, 2015, sought any professional help in regards—

*MS. BARRETT*: Your Honor. I'm going to object to relevance in regards to—I mean the affect [sic] that this has had on him, it's not relevant to the elements of this crime.

*THE COURT*: The objection is overruled. Answer my question.

*MR. DAMBRUN*: No, sir. I have not sought professional help.

*THE COURT*: Have you contemplated that?

*MR. DAMBRUN*: Yes, sir.

The trial court is permitted to ask questions of witnesses. MRE 614(b). Reviewing the challenged question in context indicates that Judge Callahan's motivation for asking the questions was likely to determine whether the victim suffered psychological injury sufficient to score Offense Variable 4 at ten points. See MCL 777.34(1)(a). While we believe that the advisable practice in this case would have been to leave this consideration for the appropriate post-verdict mechanisms,[3] we do not believe that Judge Callahan's questioning demonstrates bias against defendants. Rather, the question appears to be intended to aid the development of a complete record so that further evidentiary hearings would not be required.

As already noted, defendant Miller has presented this Court with several other examples of Judge Callahan's alleged bias.[4] Having reviewed each example, we conclude that Judge Callahan's interjections do not indicate bias towards any party. Rather, each interjection was an exercise of Judge Callahan's responsibility to control the proceedings before him. Indeed, Judge Callahan interjected at appropriate times during *each* attorney's questioning. Moreover, Judge Callahan instructed the jury that, if it believed that the court had an opinion about the case, it was to disregard that opinion and decide the case solely on the evidence presented. Thus, because the totality of the circumstances does not establish a reasonable likelihood that Judge Callahan's conduct improperly influenced the jury, defendant Miller's argument is without merit.

## 4. OFFENSE-VARIABLE SCORING

Defendant Miller next argues that he is entitled to resentencing because of errors in the scoring of the sentencing guidelines. Defendant Miller argues that the trial court improperly assessed 10 points for offense variable (OV) 4 and five points for OV 16. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Id*.

The trial court is required to assess 10 points for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The trial court

---

[3] The "central object of judicial questioning should be to clarify," not to introduce new evidence. *Stevens*, 498 Mich at 173. To the extent that the facts of the particular case render the victim's psychological injury an irrelevant consideration for trial, psychological injury may be addressed in the presentence investigation report or the written or testimonial victim-impact statements.

[4] We note that, for many of these examples, defendant Miller simply cites to the record without any particularized argument regarding why the exchange was improper. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Payne*, 285 Mich App at 195 (internal citation and quotation marks omitted). Nonetheless, we have reviewed these portions of the record and conclude that there is no evidence of judicial bias.

should score OV 4 at "10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2). At trial, one of the victims, Mr. Dambrun, testified that the incident had affected him psychologically to the point that he had contemplated seeking professional help. This testimony was sufficient to score OV 4 at 10 points.

The prosecution concedes that the trial court erred by scoring OV 16 at five points. Nonetheless, because this scoring error did not affect defendant Miller's guidelines range, defendant Miller is not entitled to resentencing. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

## 5. MOTION FOR A NEW TRIAL

While this appeal was pending, this Court granted defendant Miller's motion to remand[5] to allow him to file a motion for a new trial based on a posttrial affidavit in which defendant Dulaney admitted his participation in the crimes, but denied that defendant Miller was involved. Defendant Miller argued that defendant Dulaney's posttrial affidavit was newly discovered evidence that entitled him to a new trial. The motion was assigned to Judge Thomas Hathaway, who conducted an evidentiary hearing at which defendant Dulaney was the sole witness. Following the hearing, Judge Hathaway found that defendant Dulaney's testimony was not credible and that defendant Dulaney's posttrial affidavit and testimony were only newly available evidence, not newly discovered evidence. Accordingly, Judge Hathaway denied defendant Miller's motion for a new trial. Defendant Miller now challenges that decision.

"This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for a new trial." *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

> For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that: (1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial. [*People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (internal citations and quotation marks omitted).]

A codefendant's testimony can be newly discovered if the defendant was not aware of it at the time of trial, but, if the defendant knew or should have known about the codefendant's testimony before or during trial, a new trial is not available under the test for newly discovered evidence. *People v Terrel*, 289 Mich App 553, 567, 570; 797 NW2d 684 (2010), overruled in part on other grounds by *People v Grissom*, 492 Mich 296; 821 NW2d 50 (2012).

---

[5] *People v Miller*, unpublished order of the Court of Appeals, issued December 19, 2017 (Docket No. 334807).

Here, defendant Miller had notice before trial that the witnesses had identified defendants as participants in the crime. Accordingly, defendant Miller should have been aware that, assuming *arguendo* that defendant Dulaney committed the charged offense but defendant Miller did not, defendant Dulaney could testify that defendant Miller was not involved in the offense. That defendant Dulaney was not willing to testify at trial does not mean that the evidence was not discoverable before trial. Rather, defendant Dulaney's unwillingness to testify at the original trial merely indicates that the evidence was unavailable. Thus, the trial court correctly determined that defendant Dulaney's post-conviction affidavit and testimony were newly available evidence, not newly discovered evidence. Accordingly, because newly available evidence is insufficient to warrant a new trial, Judge Hathaway properly denied defendant Miller's motion for a new trial. See *id*. at 569-570.

### 6. CASE REASSIGNMENT

After Judge Hathaway denied defendant Miller's motion for a new trial, defendant Miller filed a motion for reconsideration of that decision. The motion was referred to newly appointed Judge Donald Knapp, who had assumed Judge Hathaway's docket. Judge Knapp denied the motion. Defendant Miller now argues that the motion for reconsideration was improperly assigned to Judge Knapp, and instead should have been reviewed by Judge Hathaway. Nonetheless, to prevail on a motion for reconsideration, a party must demonstrate that a palpable error occurred by which the court and the parties were misled and that a different disposition of the motion would result from correction of the error. *People v Walters*, 266 Mich App 341, 350; 700 NW2d 424 (2005), citing MCR 2.119(F)(3). We have already concluded that Judge Hathaway did not err by denying defendant's motion for a new trial. Therefore, assuming *arguendo* that the reassignment was erroneous, because defendant Miller's motion for a new trial was without merit, his motion for reconsideration of the denial of that motion is equally without merit—regardless of the judge deciding it. Thus, defendant Miller cannot show any prejudice from the reassignment. Accordingly, defendant Miller cannot show any entitlement to relief. See *People v McCline*, 442 Mich 127, 134; 499 NW2d 341 (1993) (concluding that, to be entitled to relief for an improper assignment, the defendant must show prejudice from the reassignment).

Therefore, we affirm defendant Miller's convictions and sentences.

### B. DOCKET NO. 334813

Defendant Dulaney does not challenge his convictions. Rather, defendant Dulaney raises several challenges to his sentences. At defendant Dulaney's original sentencing hearing, he requested sentences at the low end of the sentencing guidelines range. Judge Callahan responded that he did not believe that the facts of the offenses justified any leniency. Defendant Dulaney told the court that he was young and had "made a couple of dumb decisions in the past" and that he was sorry. Judge Callahan found that Dulaney and his co-participants had terrorized the victims and that the only mitigating factor in this case was that no one was physically injured. The following exchange then occurred on the record:

> *THE COURT*: Now, if I was furnished the names of the other thieves that assisted you, I might be of a different mind. Get what I'm telling you?

*DEFENDANT DULANEY*:  Yes, sir.

*THE COURT*:  I might be of a total [sic] different mind.  Who were they?

*DEFENDANT DULANEY*:  I don't know.

*THE COURT*:  Then you've written your own sentence.

Defense counsel then requested a brief moment to talk with defendant Dulaney, which Judge Callahan granted.  After that break, defense counsel indicated that defendant Dulaney was willing to cooperate with investigators:

*THE COURT*:  All right.  Tell me what your pleasure is, Ms. Barrett.

*MS. BARRETT*:  If the Court is going to give him some deference he—

*THE COURT*:  I will give him considerable deference.

*MS. BARRETT*:  Well, he would like that considerable difference [sic]—

*THE COURT*:  That opportunity?

*MS. BARRETT*:  Yes, he would like that opportunity.

*THE COURT*:  All right.  What I'm going to do is I'm going to set this sentencing over one week to afford the defendant to identify these individuals.

It will be necessary for you, Mr. Dulaney, to testify at their trials once apprehended and charged; do you understand?

*DEFENDANT DULANEY*:  Yes.

Judge Callahan then set a new sentencing date, but a short time later that same day, the parties reconvened and the following was placed on the record:

*THE COURT*:  Mr. Dulaney, the prosecuting attorney has taken a look at what you have offered to him.  It does not seem to be acceptable; is that correct?

*MR. GLYNNE*:  I'd agree, Judge.

*THE COURT*:  Okay.  So in light of that I'm just going to impose the sentence originally that I have thought of in regard to you and you want to say anything else to me?

*DEFENDANT DULANEY*:  Whatever you give me, sir, I just got to accept it.

Judge Callahan then sentenced defendant Dulaney to concurrent prison terms of 25 to 40 years for each armed-robbery conviction and two to four years for the larceny conviction, to be served consecutive to a prison term of 5 to 20 years for the home-invasion conviction.

Defendant Miller was sentenced the next week. At defendant Miller's sentencing, Judge Callahan realized that defendant Dulaney's sentence for the robbery convictions exceeded the guidelines range. Thus, at a subsequent hearing, Judge Callahan resentenced defendant Dulaney to reduced terms of 15 to 40 years for each of his robbery convictions, which was within the guidelines range. Judge Callahan did not change the sentences for the larceny and home-invasion convictions, which were within the guidelines range.

## 1. GUIDELINES DEPARTURE

On appeal, defendant Dulaney first argues that Judge Callahan improperly departed from the sentencing guidelines range when he imposed the original sentence for defendant Dulaney's robbery convictions without giving a justification for the departure on the record. Nonetheless, Judge Callahan recognized the error and subsequently resentenced defendant Dulaney within the guidelines range. This subsequent resentencing renders the issue moot.

## 2. COERCIVE SENTENCING

Defendant Dulaney next argues that Judge Callahan improperly attempted to coerce him into cooperating with authorities. We agree. "It is a violation of Fifth Amendment rights for a judge to actively use the sentencing power to elicit information from a defendant." *People v Peques*, 104 Mich App 45; 46; 304 NW2d 482 (1980), affirmed 410 Mich 894 (1981). See also *People v Anderson*, 391 Mich 419, 423; 216 NW2d 780 (1974). While the judge may reward cooperation with authorities, he may not coerce it. *Id*.

Here, defendant Dulaney declined to give the names of two of his accomplices. His decision to so refrain was an invocation of his Fifth Amendment right to remain silent. *Id*. Judge Callahan infringed on this right by giving defendant Dulaney an ultimatum: either defendant Dulaney would reveal the names of his accomplices or he would "[write] his own sentence." The prosecution argues that Judge Callahan's sentence was not a punishment for defendant Dulaney's decision not to reveal his accomplices—i.e., an increased sentence—but rather a refusal to grant defendant Dulaney's request for leniency. We fail to see the importance of this distinction. The basic holding of *Peques* is that the judge may not use his sentencing power to coerce the defendant into producing information. Despite the fact that Judge Callahan framed his ultimatum in terms of "deference," the record is clear that Judge Callahan was improperly using his sentencing power to elicit information and testimony from a defendant who had chosen to remain silent.

Therefore, if defendant Dulaney's original sentence—which exceeded the guidelines range—were before us, we would grant him resentencing on this issue. Defendant Dulaney, however, has already been granted resentencing, during which Judge Callahan imposed a reduced sentence within the appropriate guidelines range. Defendant Dulaney's reduced sentence is presumptively proportionate and must be affirmed by this Court. *People v Babcock*,

469 Mich 247; 261; 666 NW2d 231 (2003). See also *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016); *People v. Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008).

Defendant Dulaney argues, however, that the *Pesque* error entitles him to resentencing before a *different* judge. If defendant Dulaney is correct, then his resentencing before Judge Callahan would be insufficient to cure the *Pesque* error and defendant Dulaney would be entitled to another resentencing. Nonetheless, we conclude that the *Pesque* error does not entitle defendant Dulaney to resentencing before a different judge.

Although the *Pesque* court, 104 Mich App at 46-47, summarily ordered resentencing before a different judge, subsequent cases have concluded that a *Pesque* error does not automatically entitle a defendant to resentencing before a different judge. See *People v Evans*, 156 Mich App 68, 71-72; 401 NW2d 312 (1986). Rather, to determine whether resentencing should occur before a different judge, we employ a three-part test, weighing:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*Id*. at 72 (internal citation and quotation marks omitted); see also *People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997).]

Considering these factors, we conclude that resentencing before a different judge is not warranted. First, Judge Callahan has already resentenced defendant. During this resentencing, Judge Callahan made no mention of defendant Dulaney's choice not to name his accomplices. Rather, Judge Callahan simply imposed a sentence within the appropriate guidelines range. Thus, regarding the first factor, it appears that Judge Callahan had no issue putting out of his mind his previously expressed views. Moreover, concerning the second factor, because defendant Dulaney's within-guidelines sentence is presumptively proportionate to the seriousness of his conduct, *Babcock*, 469 Mich at 261, the appearance of justice is preserved. Lastly, with regard to the third factor, because defendant Dulaney has already received an appropriate sentence during resentencing, resentencing before a different judge would entail waste of already-strained judicial resources.

Thus, we conclude that defendant Dulaney is not entitled to resentencing before a different judge. Therefore, because Judge Callahan has already resentenced defendant Dulaney and imposed an appropriate sentence, defendant Dulaney has already received the relief necessary to remedy the *Pesque* error. No further relief is warranted.

### 3. CONSECUTIVE SENTENCING

Finally, defendant Dulaney argues that the trial court improperly imposed a consecutive sentence for his home-invasion conviction without justifying that sentence on the record. We agree. MCL 750.110a(8) authorizes the trial court to order a sentence for first-degree home invasion to be served consecutively to sentences "for any other criminal offense arising from the

same transaction." Whether to impose a consecutive sentence under this statute is within the trial court's discretion. See *Hill*, 221 Mich App at 394-395. Nonetheless, when exercising this discretion, the trial court must "articulate on the record the reasons for each consecutive sentence imposed." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). Here, Judge Callahan failed to justify the consecutive sentence with particularized reasons on the record either at the initial sentencing or the resentencing. *Id*. at 666. Thus, remand is necessary for the trial court to articulate its reasoning for imposing the consecutive sentence.

## III. CONCLUSION

In Docket No. 334807, we affirm defendant Miller's convictions and sentences. In Docket No. 334813 we remand for further explanation of defendant Dulaney's consecutive sentence. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter